# Hill et al. v. City Of Providence et al.

May 25, 1948.

Wm. H. Crutcher, Jr. for appellants.

W. Fred Hume for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Affirming.

In the trial court, Providence, a city of the fourth class, filed declaratory judgment suit to test the validity of a proposed issue of bonds for the purpose of constructing an auditorium-gymnasium suitable for the use of the City and Board of Education wherein the City may hold public meetings, and the school carry out a program of physical education and recreation. Defendants were the City Board of Education of the Providence Independent School District, and Thomas Hill, a citizen and taxpayer of the city and school district, the latter defending for all persons similarly interested. The petition contained all requisite allegations to meet the requirements of Civil Code of Practice, Sections 639a-1 et seq.

There is no dispute as to facts; the issue, if there is one, was raised by general demurrer to the petition. On April 8, 1948, the city duly adopted a comprehensive ordinance providing for the issuance of bonds for the purpose of meeting the cost of construction. The payment of interest on and retirement of the bonds was to be met by revenues arising from rentals of the project, by both the City and the Board.

It is agreed that if the courts hold the issue to be valid, the Board of Education will at once convey a suitable site on which to erect the proposed building, which the Board of Education will use for all proper purposes in connection with the operation of the public school system, and that as rent it shall pay to the city each year the sum of $3500, plus a sum sufficient to keep the property insured, and pay costs of maintenance. The city is likewise to have use of the building for proper purposes, at times when no interference with the Board's use may arise, for which use the city binds itself to pay into the Bond and Redemption Fund, the sum of $3500 per year in monthly installments. The lease to the Board is to be for a period of one year, with the right of the Board to renew from year to year, the last lease to end on May 31, 1965, when the city, if all covenants and agreements are observed, is to convey the land and improvements to the Board, free of cost.

It was agreed that should there be an issue of bonds less than as authorized by the ordinance the money rent due from the city shall be proportionately decreased. The ordinance is made part of the petition, and the chancellor was asked to declare rights as follows:

(1) That the city is empowered to issue its city gymnasium and auditorium revenue bonds dated May 1, 1948, in the manner provided by the ordinance.

(2) That said bonds when executed and sold as provided will constitute valid and binding obligations of the city, enforceable according to their import.

(3) That the city is authorized to pledge the payment of rent for the use of the building from excess revenue from the electric light and water works system in the manner set forth in the ordinance.

(4) That the Board of Education of the district may legally enter into a lease for the use of the building in the manner set out.

Upon submission the court overruled defendant's demurrer, and concluding that the court had jurisdiction, and an actual controversy existed, declared the rights to be as set out above. Objections were interposed to the judgment and appeal granted.

The exhibited ordinance provides for issuance of

bonds to the amount of one hundred thousand dollars to bear interest at the rate of 3¾ per cent, to run for a period of 20 years, optionally redeemable after a specified period. An observation of the resolution shows it to be in the comprehensive form usually adopted by those skilled in the art. It recites that the city is the owner of the water and electric systems, both revenue producing "a portion of which is available for general purposes of the city and not required by law to be devoted to any special purpose."

Principal and interest are payable only from a fixed amount of the gross revenue derived from the operation of the public project, set aside as the "Auditorium and Gymnasium Fund," provided that if at any time there be a failure to set aside the minimum prescribed revenues derived from the project, then the city covenants to apply funds arising from operation of the utility systems up to the sum of $3500 per year. It is specifically provided that the series of bonds issued "do not constitute an indebtedness of the City within the meaning of any constitutional provision or condition," and no bond holder may enforce payment against any property other than the revenues.

The bonds stipulated that upon approval of the bonds the city should begin the construction of the building, and they were not to be issued until the City and Board had executed a lease, which lease shall provide in part that for so long as the bonds are outstanding and the Board makes use of the building it will pay the sum fixed as annual rental.

There was some proof taken; the chairman of the Board of Education testifying that the Board had fully agreed to the program evidenced by the resolution, and pointed out the necessity for a recreational center and auditorium. He said the Board had no bonded indebtedness; all bills were paid for the year, and there was a small surplus, and he was of the opinion that the Board was in such financial condition as to allow payments as provided, adding that every effort would be made to make the project self supporting with a fair profit; other testimony was to the effect that the profits from operation of the utilities would be sufficient to meet the terms of the bonds if necessary.

We have carefully examined the ordinance which embodies form, terms and conditions of the bonds and the financing plan, and are unable to find any legal objection. The constitutionality of acts permitting the manner of financing for like purposes has been upheld; the case of Dodge v. Jefferson County B. of E., 298 Ky. 1, 181 S. W. 2d 406, holding that school boards had the power to erect and maintain suitable projects for physical training and recreation as a part of the common school system.

All other points involved and discussed appear to have been affirmatively settled in Davis v. Board of Education of Newport, 260 Ky. 294, 83 S. W. 2d 34; Scott Co. B. of E. v. McMillen, 270 Ky. 483, 109 S. W. 1201, and the late cases of McKinney v. City of Owensboro, 305 Ky. 253, 203 S. W. 2d 24, and Dunn v. City of Murray, 306 Ky. 426, 208 S. W. 2d 309, 311, in both of which we had under consideration plans of the cities to construct and finance similar ''public projects'' under Chapter 58, KRS.

Here the project is to be carried out and financed under that chapter and as to the school board under Chapter 162, KRS. We find no valid reason why the whole plan may not be financed, erected and operated under the combined provisions of both.

We note that the chancellor was asked to and did declare as set out in question 2 in the first part of this opinion, and adopted the same language in his judgment. This language was used in the opinion in the Dunn case and for clarification we said: ''We construe this provision of the judgment to mean that the bonds are not direct obligations of the City, but such as the City shall be required to pay only out of the revenues of the. joint enterprise,'' and we add available revenues not required for any particular purpose, as provided.

We are of the opinion that the chancellor correctly defined the rights and the judgment is affirmed.