## Walker et al. v. City of Maysville.

April 26, 1949.

Joseph R. Rubin, Franklin P. Hays and Skaggs, Hays & Fahey for appellant.

W. G. Kenton for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Affirming.

The legislative body of the city, one of the third class, by ordinance declared an emergency to exist which

required the extension, improvement and maintenance of its sewer system. To accomplish the purposes the ordinance provided for the issuance of $125,000 "public project" revenue bonds. The ordinance follows the usually adopted form and pattern approved in many of our "bond issue" cases.

There is presented no question as to the procedure followed in the passage of the ordinance, which sets out in full the form and substance of the proposed bonds which are to be retired in regular annual installments over a period of twenty years, and to bear interest at a rate not to exceed 6 per cent per annum, the bonds are to be retired solely from revenue derived from the operation of the plant, and are not to be a charge against the city, and no tax shall be levied for the purpose of discharging them, or paying interest. The adopted plan accords with the provisions of Ch. 58, KRS.

The city filed petition seeking a declaration of rights, and asked the court to permit appellant, a citizen and property owner named as defendant, to answer for himself and other citizens similarly situated. The petition set up the facts as stated above; and other facts necessary to present an actual controversy. However, Mr. Walker, for himself and his class, filed answer and amended answer, which admitted all factual allegations of the petition but denied legal conclusions. Substantially the defensive pleadings challenged the authority of the Board of Commissioners to carry out the proposal to issue the bonds. Specifically it was alleged that the body was undertaking to issue the bonds under the provisions of Ch. 58, KRS, as alleged in the petition, rather than under some of the provisions of Ch. 94, KRS.

Mr. Walker, for himself and class, alleged that he and they were already being served by the existing system, and assumed that all proceeds from the sale of bonds would be used in extending the system in other parts of the city and adjacent properties (as alleged in the petition), thus offering no benefits to defendants or their properties, except "any benefit that may accrue from the improvement to the general health of the community as a whole." That, as the ordinance provided, the bonds should be paid from rents and service charges of the project, all members of the class would be compelled

to pay rents and charges for service in order to discharge the bonds, when the class would receive no benefits, other than as stated above, and the court was asked to hold that the city had no right to charge the class any sum for the payment of the bonds, and that the city has no authority to issue the bonds at all.

The cause was submitted on pleadings and exhibits; the chancellor following the request for declaration of rights, aside from passing on procedural questions which are not challenged, holding that an actual controversy existed, further held:

(1) That the issuance of the bonds to the amount stated in the petition for the purpose of improving and extending the sewage system as a public project is valid, and not violative of any section of the Constitution or any statutory law, and that the ordinance filed as an exhibit manifested a valid exercise of the city's power.

(2) That the proposed bonds may be advertised for sale with bidders free to name the rate of interest, not however to exceed 6 per cent per annum. KRS 58.030.

(3) The city may validly issue city sewer revenue bonds pursuant to Ch. 58, KRS, even though there is an existing means of issuing such bonds under the provisions of Ch. 94, KRS, particularly in view of the fact that a portion of the proposed project is to be located without the city's limits, although such fact need not exist for the validity of bonds issued under Ch. 58, KRS.

(4) The principal and interest of the proposed bonds shall be payable solely from a fixed amount of gross revenues derived from the operation of the project, and no tax shall be levied for the purpose of paying the principal or interest thereon; the proposed bonds do not constitute an indebtedness of the city within the meaning of any constitutional or statutory limitation or prohibition.

On inspection of the ordinance it becomes apparent that the proposal as alleged was based on the provisions of Ch. 58, KRS, and that its terms and conditions were strictly followed. Section 58.020 of that chapter provides that any governmental agency may construct, maintain, add to or improve any public project, that is, lands,

buildings, works or facilities intended for the promotion of public health and welfare, KRS 58.010. The first section above noted provides that the proposed project may be located partly within and partly without the territorial limits of the governmental agency. Section 58.120 provides specifically for extension and improvements of municipally owned existing systems or public projects, and the issuance of bonds in furtherance.

It appears that proponents chose to follow the provisions of KRS Ch. 58 rather than Ch. 94, because of the fact that the former permits the issuance of bonds for public projects which may be located partly within and partly without the operating agency. There may be other differences not necessary to note, since it is clear that the city's legislative body had the power to adopt and follow its provisions. This is no new question, as we have heretofore held that Ch. 58, KRS, includes the extension, improvement and maintenance of sewage systems. McKinney v. City of Owensboro, 305 Ky. 253, 203 S.W.2d 24; Dunn v. City of Murray, 306 Ky. 426, 208 S. W. 2d 309, and in principle Hill v. City of Providence, 307 Ky. 537, 211 S. W. 2d 846. The Dunn case places the stamp of approval on a sewer revenue bond issue for extension and improvement of an existing combined water works and sewage system, and pointed out that Ch. 58 had been held constitutional in the McKinney-Owensboro case, which approved the pledging of the revenues from the entire systems, and did not limit the retirement of bonds from revenues derived from that portion which constituted extension. The contention of appellants that the city lacked authority to issue bonds for extension and improvement of the existing system, and use the revenues from the entire system, including the extensions is not of merit. It is not shown that any further hardships or obligations on the class will result. They will still pay the same rentals and service charges as they are now paying unless there be an increase, which would apply to all users of the facilities. They admit the benefit of public health and welfare which is sufficient to authorize the payment of the bonds from revenues derived from the operation to the whole system. Perhaps the complaint advanced was suggested by what we said in Jones v. Stearns, 275 Ky. 729, 122 S.W.2d 766, 767, where the ef-

fort was to pledge the revenues from a combined water and sewer system, when the latter only was to be constructed, we said: "There is nothing in the 1936 Act to confer power on the city to encumber an already-acquired waterworks system, except for extensions or additions to such system."

It may be inferred from what we said that if the proposal there had been for extension or addition to the system or systems, the result would have been different. However that may be, since there is no extra obligation on the class of defending taxpayers, and it is made plain that the city is not obligated to pay any part of the cost of the project, we are of the opinion that the proposed issue is not invalid on this ground. This appears to have been the holding in City of Bowling Green v. Kirby, 220 Ky. 839, 295 S.W. 1004.

Again we note that in Dunn v. City of Murray, 306 Ky. 426, 208 S. W. 2d 309, 310, we referred to the Jones-Stearns case and our holding therein, and pointed out that the decision was rendered prior to the enactment of Ch. 58 KRS "wherein the specific authority has been granted." We find nothing in the statutes in question which would preclude the use of revenues from the extended and improved sewer system for the purpose of retiring the proposed bonds, so we are of the opinion that the chancellor correctly declared the rights of parties, and in holding the proposed issue of bonds to be valid.

Judgment affirmed.