Charles C. BAIRD, Individually, etc.,
Appellants,

v.

CITY OF ADAIRVILLE, Kentucky, a Municipal Corporation, etc., Appellees.

Court of Appeals of Kentucky.

Feb. 23, 1968.

Rehearing Denied April 26, 1968.

William G. Fuqua, Russellville. for appellants.

Jesse L. Riley, Jr., Russellville, Franklin P. Hays, Skaggs & Hays, Louisville, William G. Craig, Sandidge, Holbrook, Craig & Hager, Owensboro, for appellees.

CLAY, Commissioner.

This is a declaratory judgment proceeding to test the validity of a lease agreement between the City of Adairville and the Wesken Corporation. The Chancellor upheld the lease.

The city proposes by the issuance of revenue bonds to construct a natural gas distribution and transmission system. It has en-

tered into an agreement with Wesken to lease this facility for a term of 25 years, with an option in Wesken to extend the lease for an additional 20 years. (The rentals will be used to retire the bonds.)

■ It is first contended the lease agreement violates section 164 of the Constitution which limits "franchises" to 20 years. However, it has been consistently held that the leasing of property owned by a city in a proprietary capacity does not constitute the granting of a "franchise". Board of Councilmen of City of Frankfort v. Pattie, 227 Ky. 343, 12 S.W.2d 1108; Faulconer v. City of Danville, 313 Ky. 468, 232 S.W.2d 80; and Miller v. City of Owensboro, Ky., 343 S.W.2d 398. Appellee requests that we re-examine this question, which has been done, but we believe the reasoning of the opinions in the above cases is sound.

■ It is next contended the lease agreement violates section 179 of the Constitution because the city will be loaning its credit to Wesken. The argument is made that since the city will own the system which generates revenue, this will result in Wesken "having better credit than it would otherwise have". We have difficulty understanding how this result could constitute a *loan* of credit, but in any event in Miller v. City of Owensboro, Ky., 343 S.W.2d 398, we specifically held that the issuance of revenue bonds to finance a public project, even if the project was to be rented, did not constitute a lending of credit in violation of section 179 of the Constitution.

It is further contended the lease agreement is illegal because it attempts to establish rates without the approval of the Public Service Commission. The agreement specifies a "General Service Rate", authorizes the negotiation of industrial rates between Wesken and the customer, and provides that the specified rates may be adjusted (apparently by Wesken) to the extent necessary to produce revenues reflecting the increase or decrease in the cost of gas to Wesken. There is the further provision that after the

end of the fifth year of the lease Wesken will have the option to adjust rates (1) to keep the sale price of gas consistent with the fluctuation in the economy during the term of the lease, and (2) in accordance with the percentage increase or decrease established by certain investor-owned utilities.

No reference is made in the lease agreement to the Kentucky Public Service Commission. The parties have assumed the contract exempts the rates from Commission approval. The Chancellor so construed the agreement and in effect adjudicated that these rates, as adjusted by Wesken, would be lawful without such approval.

■ KRS 278.040(1) empowers the Commission to "regulate utilities". KRS 278.-010(3) defines a "utility" as "any person", *except* a water district or *a city*, "who owns, controls, or operates or manages any facility" used in the production, manufacture, etc., of natural or manufactured gas. The argument is made on behalf of the city that since it *owns* the facility, it is exempt from Public Service Commission supervision or regulation. See McClellan v. Louisville Water Company, Ky., 351 S.W.2d 197. Perhaps this argument would have been valid if the city had not surrendered its right to fix the rates. While it may be said the "General Service Rates" were fixed by the city in the agreement, Wesken is given exclusive authority to adjust those rates under certain conditions. Since Wesken *operates* this facility, under the definition above quoted it is a nonexempt "utility", and under KRS 278.200 the Commission has power to regulate rates fixed by it. Wesken is not an "operating facility" of the city as the Louisville Water Company was held to be in Rash v. Louisville & Jefferson County Metropolitan Sewer Dist., 309 Ky. 442, 217 S.W.2d 232.

■ As heretofore noted, the parties and the Chancellor have construed this agreement as exempting Wesken from Public Service Commission control. So construed, the rate provisions are illegal and void.

The agreement contains no provision with respect to severability. In our opinion the illegal part thereof relating to rates is most material to the whole scheme and this illegality vitiates the entire lease agreement. As a consequence we must likewise declare the bond ordinance based thereon invalid.

The judgment is affirmed in part and reversed in part, with directions to enter judgment consistent with this opinion.

All concur.